IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**VP MANAGEMENT, LLC,**
**Employer Below, Petitioner**

**v.) No. 24-ICA-423**    (JCN: 2020011707)

**DEVOREA SCARBRO,**
**Claimant Below, Respondent**

**FILED**

**June 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner VP Management, LLC, ("VP") appeals the September 13, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Devorea Scarbro filed a timely response.[1] VP did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's orders and 1) granting the claimant's request to add radiculopathy lumbar region (L4-L5 radiculitis) and radiculopathy lumbosacral region as compensable conditions in the claim; 2) finding Ms. Scarbro is entitled to temporary total disability ("TTD") benefits from the time TTD was last paid through October 25, 2020, and thereafter as supported by proper medical evidence; 3) authorizing lumbar epidural injections; and 4) authorizing an EMG/NCS of the lower extremities and a referral to Rajesh V. Patel, M.D.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Scarbro suffered a workplace injury on October 23, 2019, while she was tugging on a tangled load of laundry to retrieve it from a washing machine when the load suddenly broke free. On October 28, 2019, Ms. Scarbro sought treatment at the Plateau Medical Center emergency department where she saw Todd A. Lares, M.D. Ms. Scarbro reported pain in her shoulder, the right side of her back, and her right wrist as a result of the injury. Dr. Lares further indicated that Ms. Scarbro was unable to perform her regular job duties due to back pain that caused her problems in standing. A lumbar spine CT obtained at the visit showed disk bulging with spinal canal stenoses from L3-L4 to L5-S1, with bilateral foraminal stenoses at L3-L4 and L4-L5. Dr. Lares and Ms. Scarbro completed an Employees' and Physicians' Report of Occupational Injury or Disease form

---

[1] Ms. Scarbro is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. VP is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

at the visit. On the form, Ms. Scarbro reported injuries to her low back, right wrist, and right shoulder as a result of the workplace incident. Dr. Lares listed the diagnoses as sprain of the right carpal joint of the right wrist, intravertebral disc disorders with radiculopathy of the lumbar region, sprain of unspecified parts of the right shoulder girdle, and sprain of the ligaments of the lumbar spine as the result of an occupational injury. Further, Dr. Lares indicated that the injury aggravated preexisting degenerative changes in the lumbar spine.

On November 4, 2019, Ms. Scarbro saw Richard Spencer, M.D., her primary care physician, who completed a second report of injury form, which Ms. Scarbro signed on October 31, 2019. Ms. Scarbro again explained that she was injured while unloading tangled items from a washer. Ms. Scarbro further indicated that she had braced herself with her foot on the washer and pulled hard; when the laundry gave way, she hit her arm on the washer and twisted her back. After diagnosing injuries to Ms. Scarbro's low back, right shoulder, and right wrist, Dr. Spencer referred Ms. Scarbro to an orthopedic and spinal surgery clinic. By order dated November 15, 2019, the claim administrator held the claim compensable for sprains/strains of the lumbar spine, right wrist, and right shoulder.

With the background of the injury in the claim being described, this Court now notes the evidence of Ms. Scarbro's prior history of low back injuries, treatment, and diagnoses. On May 1, 2000, Ms. Scarbro was treated at an emergency room after the car in which she was sitting was struck by another vehicle. Ms. Scarbro complained of right foot numbness and tingling and was diagnosed with a mild to moderate low back strain and shoulder strain. An x-ray performed on September 1, 2000, revealed sacroiliac arthrosis, bilaterally, facet arthrosis, a possible annular derangement of the L3 disc, and mild spondylosis with disc narrowing at L4 and L5. From March 15, 2013, through March 31, 2017, Autumn Feazell, FNP-BC, treated Ms. Scarbro for complaints related to her low back, right leg, and hip. The following diagnoses were made by FNP-BC Feazell at these visits: sciatica, chronic low back pain, idiopathic peripheral neuropathy, right sided body weakness, and myalgias. On May 12, 2016, FNP-BC Feazell noted that a pain clinic prescribed Ms. Scarbro opioid pain medications to treat her chronic neck and back pain.

Another report that documents Ms. Scarbro's prior medical history is that of Mustafa Rahim, M.D., dated January 8, 2015. Dr. Rahim examined Ms. Scarbro regarding her back pain stemming from her November of 2014 injury when Ms. Scarbro fell down stairs. Ms. Scarbro noted that opioid pain medication alleviated the shooting pain that went from her hip to her right lower extremity. Dr. Rahim referred Ms. Scarbro to John R. Orphanos, M.D., who examined her on March 12, 2015. Ms. Scarbro told Dr. Orphanos that she had intermittent right leg pain radiating into her thigh and she noted some improvement since the injury. Pain management was recommended at the visit. On October 11, 2016, Paul Bachwitt, M.D., examined Ms. Scarbro for an Independent Medical Evaluation ("IME") related to a workplace injury that occurred in November of 2014, when she fell down stairs. In his report dated October 12, 2016, Dr. Bachwitt noted that Ms. Scarbro reported numbness in her right leg of unknown etiology that began prior to

2

November 2014. Dr. Bachwitt also noted that Ms. Scarbro was treated about every week through December of 2014 by a physician who prescribed pain medications. Dr. Bachwitt did not find any abnormalities to explain her ongoing symptoms and her inability to stand for long periods at work. According to Dr. Bachwitt, an FCE placed her in the sedentary physical demand level and recommended that she stand/sit with posture changes as needed. Dr. Bachwitt observed that Ms. Scarbro walked with a moderate left limp. Ms. Scarbro told Dr. Bachwitt that she returned to work on August 2, 2016, for a different employer, performing light duty administrative/supervisory work that also involved walking, but no lifting, pushing, or pulling. He also noted that previously, she had been awarded Social Security Disability benefits. Dr. Bachwitt assessed 5% whole person impairment ("WPI") related to Ms. Scarbro's lumbar spine injury.

On March 31, 2017, Ms. Scarbro discussed some paperwork with FNP-BC Feazell, whose report on that date does not contain any medical findings. Thus, after Dr. Bachwitt's 2016 report, a gap exists in treatment notes until October of 2019 when Ms. Scarbro received treatment for the work injury in the subject claim.

Regarding Ms. Scarbro's treatment for the compensable injury in this case, Rajesh V. Patel, M.D., an orthopedic spine surgeon, began treating Ms. Scarbro on December 11, 2019, for complaints about her low back and legs that had been ongoing since October of 2019. According to Dr. Patel, lumbar spine x-rays revealed degenerative changes and a lumbar CT from October 2019 showed stenosis at L3-L4 and L4-L5, lateral recess narrowing at L5-S1, and facet arthropathy from L3 through S1. Dr. Patel assessed a lumbar sprain, bilateral SI joint sprain, rule out lumbar disc herniation, bilateral L5 radiculitis, and lumbar stenosis. Other than noting degenerative changes in Ms. Scarbro's spine, Dr. Patel did not mention Ms. Scarbro's prior medical history regarding her lumbar spine. Dr. Patel requested a lumbar MRI to evaluate for a disc herniation. On February 17, 2020, Dr. Patel completed a Diagnosis Update requesting that the additional diagnoses of radiculopathy of the lumbar region and radiculopathy of the lumbosacral region be added as compensable conditions in the claim; Dr. Patel also noted bilateral sacroiliac sprain and L5-S1 radiculitis, right greater than the left.

Rebecca Thaxton, M.D., authored a Physician Review report dated March 23, 2020, addressing Dr. Patel's Diagnosis Update. Dr. Thaxton opined that Ms. Scarbro's symptoms were related to preexisting lumbar degenerative disease, although she felt that treatment could be authorized if the work injury caused symptoms to flare. On April 29, 2020, the StreetSelect Grievance Board issued a determination that agreed with Dr. Thaxton, and recommended Dr. Patel's Diagnosis Update be denied. By order dated April 29, 2020, the claim administrator denied Dr. Patel's request to add radiculopathy, lumbar region (L4-L5 radiculitis), and radiculopathy, lumbosacral region to the claim. Ms. Scarbro protested this order to the Office of Judges.

3

On June 26, 2020, Francis M. Saldanha, M.D., performed lumbar epidural injections which were authorized by the claim administrator. Dr. Saldanha listed diagnosis codes representing radiculopathy of the lumbar region, and other intervertebral disc displacement of the lumbar region. Dr. Saldanha noted that Ms. Scarbro only received temporary relief from previous facet injections. Dr. Saldanha performed additional injections through September 16, 2020, when he diagnosed lumbar strain, lumbar radiculitis, and lumbar facet syndrome, and recommended two more lumbar epidural injections over the next six months.

On August 19, 2020, Prasadarao B. Mukkamala, M.D., performed an IME of Ms. Scarbro for the workers' compensation claim. Dr. Mukkamala noted that Ms. Scarbro had a prior back injury and preexisting lumbar spondyloarthropathy. Ms. Scarbro told Dr. Mukkamala that at the time she was injured, she had worked for the employer "on and off for 15 months." Dr. Mukkamala determined that the injections Ms. Scarbro was given were unrelated to the work injury, but were instead used to address preexisting, noncompensable conditions. When addressing whether the work injury aggravated a preexisting condition, Dr. Mukkamala stated that "[t]here was no evidence that the injury of 10/24/2019 aggravated the preexisting conditions, but most certainly, it exacerbated the preexisting conditions." Although Ms. Scarbro was not working at the time, Dr. Mukkamala determined that she was capable of working at a light physical demand level. Further, Dr. Mukkamala noted that the diminution in sensation in Ms. Scarbro's right lower extremity was in a nonanatomical pattern. After determining that Ms. Scarbro was at maximum medical improvement for her work injury, Dr. Mukkamala rated her at 8% WPI, but apportioned 4% to preexisting, degenerative conditions; further, Dr. Mukkamala also found that Ms. Scarbro had been fully compensated by a previous 8% award granted in a prior workers' compensation claim for her low back.

On October 5, 2020, Randall Short, D.O., performed a Physician Review in which he addressed whether two lumbar epidural steroid injections should be authorized. Dr. Short observed that Dr. Mukkamala felt that the injections and pain management were unrelated to the compensable injury but were directed at treating preexisting, noncompensable conditions. Concurring with Dr. Mukkamala, Dr. Short determined that Ms. Scarbro had evidence of significant, preexisting, degenerative lumbar disease and he did not recommend authorization of the injections.

By order dated October 22, 2020, the claim administrator closed Ms. Scarbro's claim for TTD benefits on the basis that it had not received additional information from her in response to a notice issued on September 18, 2020. Ms. Scarbro protested this order to the Office of Judges.

On October 22, 2020, Dr. Spencer requested a follow up with Dr. Saldanha for additional epidural injections, a follow up with Dr. Patel, and an EMG/NCS of the lower extremities to compare with a previous study performed in 2014. In a separate letter dated

October 25, 2020, Dr. Spencer reviewed the history of Ms. Scarbro's treatment following her injury in October of 2019. Dr. Spencer suggested that it may have been premature to deem Ms. Scarbro at MMI, reasoning that Dr. Patel, her spine surgeon, had not performed a final evaluation, and there were some other potential treatment options. Dr. Spencer mentioned that an MRI had shown a partial tear in Ms. Scarbro's shoulder. Thus, Dr. Spencer determined that Ms. Scarbro remained temporarily and totally disabled due to her compensable injury.

On November 4, 2020, the claim administrator affirmed its denial of lumbar epidural injections based on the Encova Select Grievance Board Determination dated November 4, 2020. The Encova Select Grievance Board recommended the injections be denied and noted that Dr. Mukkamala placed Ms. Scarbro at MMI in August of 2020, and that Dr. Short recommended that the injections be denied. Ms. Scarbro protested this order to the Office of Judges.

On November 5, 2020, James M. Dauphin, M.D., authored a Physician Review addressing whether an EMG/NCS of the lower extremities and a follow-up with Dr. Patel should be authorized. Dr. Dauphin agreed with the opinions of Drs. Mukkamala and Short regarding epidural steroid injections. Dr. Dauphin suggested that the same rationale applied to the EMG/NCS request, i.e., that degenerative changes were causing Ms. Scarbro's symptoms. Thus, he recommended that the EMG/NCS and follow up visits be denied. On December 14, 2020, Dr. Spencer conducted a telephonic visit with Ms. Scarbro regarding complaints that she was unable to stand for more than ten to fifteen minutes, her right wrist pain was worse, and she had a recent onset of severe right knee and ankle pain. Dr. Spencer assessed lumbago with sciatica and radiculopathy.

On December 16, 2020, the Encova Select Grievance Board issued its Determination that Ms. Scarbro's requests for an EMG/NCS of the lower extremities and a follow-up with Dr. Patel should be denied. The Board noted that Dr. Mukkamala placed Ms. Scarbro at MMI and found that she did not require additional treatment. The Board also referenced and agreed with the medical reviews by Drs. Short and Dauphin. Thus, the Board determined that EMG/NCS of the lower extremities and the referral to Dr. Patel should be denied. Based on the Board's recommendation, by order dated December 16, 2020, the claim administrator denied the EMG/NCS and referral to Dr. Patel. Ms. Scarbro protested this order to the Office of Judges.

During telephonic visits with Dr. Spencer in December 2020 and February 2021, Ms. Scarbro explained that she was unable to stand longer than ten or fifteen minutes, and in December she experienced a recent sudden onset of severe right knee pain. At the February visit, Ms. Scarbro told Dr. Spencer that she fell several times during a Social Security Disability exam. Dr. Spencer's diagnoses included lumbago with sciatica on the right, and lumbar radiculopathy. Dr. Spencer authored a letter dated February 17, 2021, in

which he wrote that Ms. Scarbro remained unable to be gainfully employed from February 12, 2021, and for the next six months due to her "multiple disabilities."

On September 30, 2021, the Office of Judges issued an order affirming all four claim administrator's orders that Ms. Scarbro protested. Finding that Ms. Scarbro has a significant medical history of low back complaints, preexisting radiculitis, and/or radiculopathy, the Office of Judges affirmed the claim administrator's denial of Dr. Patel's Diagnosis Update request. Then, finding that the requests for an EMG/NCS of the lower extremities, referral to Dr. Patel, and lumbar epidural injections were related to preexisting conditions rather than the compensable lumbar sprain, the Office of Judges also affirmed the orders that denied those requests. Regarding the TTD closure, the Office of Judges relied on Dr. Mukkamala's opinion that Ms. Scarbro had reached MMI, and found that the claim was properly closed for TTD benefits. The Office of Judges found that it was reasonable to conclude that all reasonable and necessary treatment to address the compensable diagnoses had been exhausted. The Office of Judges rejected Dr. Spencer's opinion that some treatment options remained and that Ms. Scarbro was not at MMI. In particular, the Office of Judges observed that the partial tear in Ms. Scarbro's shoulder, mentioned in Dr. Spencer's letter of October 25, 2020, was not compensable in the claim.

Ms. Scarbro appealed the Office of Judges' decision to the Board. On March 21, 2022, the Board affirmed the Office of Judges' decision. Ms. Scarbro then appealed the Board's order to the Supreme Court of Appeals of West Virginia. In *Scarbro v. VP Mgmt., LLC*, No. 22-0259, 2024 WL 340594 (W. Va. Jan. 25, 2024) (memorandum decision), the Court ruled that there was a "material misstatement of the evidentiary record regarding the impact the instant compensable injury had on petitioner's preexisting conditions." *Id.* at *5. The Court noted that the Office of Judges relied on Dr. Mukkamala's findings to determine that Ms. Scarbro was at MMI and that she was only receiving treatment for noncompensable conditions. However, the Court labeled the following statement by Dr. Mukkamala to be both "equivocal" and "confusing:" "[t]here was no evidence that the injury of 10/24/2019 aggravated the preexisting conditions, but most certainly, it exacerbated the preexisting conditions." *Id.* at *3 and 5.

Importantly, the Court determined that "prior to the instant compensable injury, [Ms. Scarbro] did not have symptoms which prevented her from performing all of her job duties," but after the injury, Dr. Mukkamala advised that Ms. Scarbro was limited to lifting no more than twenty-five pounds on an occasional basis. *Id.* at *5. Based on her post-injury physical limitations, the Court determined that Ms. Scarbro raised a "possible natural inference of causation" regarding her medical issues. Thus, the Court remanded the case to the Board for further review pursuant to the Court's ruling in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022), which held that "a claimant has the burden of proving that the compensable injury exacerbated, accelerated, or worsened the preexisting condition or disease causing a new distinct injury." *Id.* at 301, 879 S.E.2d at 788 (citing Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016)).

On remand, Ms. Scarbro's appeal of the four claim administrator's orders was again considered – this time, in light of the Court's ruling in *Scarbro*.[2] As the Court directed, the Board performed an analysis of the claim under *Gill* and *Moore*, specifically addressing the rebuttable presumption established in Syllabus Point 5 of *Moore*, under which a claimant's disability may be presumed to have resulted from the compensable injury, if the pre-existing condition was previously asymptomatic, and after the coempensable injury, the claimant manifested symptoms continuously. Ultimately, the Board reversed all four claim administrator's orders and held that radiculopathy of the lumbar region (L4-L5 radiculitis) and radiculopathy of the lumbosacral region were compensable, closure of the claim for TTD benefits was premature, and that epidural steroid injections, an EMG/NCS, and a referral to Dr. Patel were medically necessary and reasonably required treatment for the compensable injury. VP now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, VP argues that the Board committed reversible error in holding that Ms. Scarbro is entitled to workers' compensation benefits for lumbar radiculopathy, additional

---

[2] The OOJ and BOR were reorganized effective October 1, 2022, when the OOJ was terminated and, as of July 1, 2022, the BOR was reconstituted and authorized to assume the duties of the OOJ; further, the Intermediate Court of Appeals was given jurisdiction to review final orders issued by the Board after June 30, 2022. *See* W. Va. Code §§ 23-5-8a and -8b (2022).

TTD benefits, and additional treatment in the claim. VP asserts that the evidence shows that radiculopathy is not only unconfirmed, but is preexisting, and any further period of disability and treatment is unrelated to the compensable injury. Further, VP claims that the Board misapplied the standard of review and drew inferences that are not supported by the record, resulting in a decision that is clearly wrong.

The main thrust of VP's assertions is that Ms. Scarbro has suffered from pain radiating into her right lower extremity since 2013, she has a history of idiopathic peripheral neuropathy, and the symptoms are preexisting and chronic. Further, VP contends that there is no indication that Dr. Patel was aware of Ms. Scarbro's preexisting condition. VP also disputes whether "radiculopathy" is an accurate diagnosis in this case, arguing that the 2019 lumbar MRI failed to reveal any findings that would result in acute radiculopathy as the only finding at L5-S1 was hypertrophic facet disease and disc bulges that had been present since 2015. Thus, VP contends that the 2019 MRI demonstrates that Ms. Scarbro's preexisting degenerative disc bulges progressed into stenoses, but that there is no explanation given as to how the compensable injury resulted in the alleged radiculopathy.

Regarding the Board's analysis under *Moore* and *Gill*, VP argues that the Board incorrectly found that Ms. Scarbro did not have prior symptoms that prevented her from performing her job duties. VP also argues that the Board committed error by finding that the lack of prior symptoms supported a "natural inference of causation" that lumbar radiculopathy is compensable. Instead, VP points to evidence of preexisting disease, a pattern of periodic flare-ups and complaints related to radiation into the lower extremities, and even evidence that Ms. Scarbro was granted Social Security Disability benefits for her low back, suggesting that her conditions previously interfered with her ability to work at some point. Also, VP notes that Ms. Scarbro reported that she had been working "on and off" for the employer. Thus, VP asserts that the Board's finding that Ms. Scarbro's preexisting issues did not prevent her from working misrepresents the true extent of her medical history. VP also points to Dr. Spencer's records as evidence that Ms. Scarbro's inability to work is related to a multitude of other health conditions and circumstances.

VP also asserts that the employer rebutted any presumption of compensability as Drs. Thaxton and Mukkamala found that the compensable injury was limited to a lumbar sprain/strain and Dr. Mukkamala established that Ms. Scarbro's diminished sensation was in a nonanatomical pattern. Further, Dr. Thaxton, VP pointed out, found that the MRI did not support a diagnosis of lumbar radiculopathy, and Ms. Scarbro failed to explain how the injury resulted in lumbar radiculopathy in light of her preexisting issues and lack of an acute disc herniation.

Finally, VP argues that Ms. Scarbro had reached MMI from the compensable sprain/strain and is no longer eligible for TTD benefits. VP also contends that ongoing treatment efforts are aimed at addressing Ms. Scarbro's preexisting right sciatica and other

health conditions such as a new onset of right knee pain in December 2020, chronic neck pain, and other noncompensable issues.

We disagree. In *Scarbro*, the Supreme Court addressed many of the issues VP now raises. In its order, the Board relied heavily on language used by the *Scarbro* Court. For instance, the Board noted that the Court determined that prior to the compensable injury, Ms. Scarbro did not have symptoms that prevented her from performing all of her job duties and that the medical evidence raises a "possible natural inference of causation as to [her] medical issues." While the Board observed that in 2016, Dr. Bachwitt found that Ms. Scarbro had pain and numbness in her right leg that began prior to 2014, of unknown etiology, the Board also observed a gap in medical records addressing Ms. Scarbro's low back after Dr. Bachwitt's 2016 examination until October 2019. On October 28, 2019, Ms. Scarbro was diagnosed with lumbar radiculopathy as a result of the occupational injury in the present claim. The Board found that "[f]ollowing the compensable injury, the symptoms of lumbar/lumbosacral radiculopathy appeared and continuously manifested themselves afterwards" and that the "compensable injury exacerbated the preexisting condition causing a new distinct injury." Thus, the Board held that in light of the *Gill* and *Moore* cases, a causal relationship existed between the compensable injury and lumbar/lumbosacral radiculopathy. The Board also noted the *Scarbro* Court's finding that Dr. Mukkamala's statements in his report were confusing.

Upon review, it does not appear that radiculopathy was diagnosed prior to the injury in this claim. Further, as the Board noted, there are no medical records that address Ms. Scarbro's low back condition after Dr. Bachwitt examined her in October of 2016, and before October 28, 2019. The *Scarbro* Court stated that Ms. Scarbro did not have symptoms that prevented her from performing all of her job duties prior to the compensable injury, and the Court indicated significant concerns about the reliability of Dr. Mukkamala's report. In fact, the Court expressed three areas of concern it had about Dr. Mukkamala's report: 1) his confusing statement that "[t]here was no evidence that the injury … aggravated the preexisting conditions, but most certainly, it exacerbated the preexisting conditions"; 2) his finding that Ms. Scarbro was at MMI; and 3) his finding that Ms. Scarbro could not resume her job without specific limits on her abilities to lift, when she had no limitations prior to the injury.

Thus, we cannot find that the Board erred in determining that the compensable injury exacerbated a preexisting condition and caused a new distinct injury of lumbar/lumbosacral radiculopathy. Nor do we find that the Board erred when it determined that the claim was closed for TTD benefits prematurely since Dr. Spencer reported on October 25, 2020, that Ms. Scarbro remained temporarily and totally disabled from the compensable injury. Pursuant to West Virginia Code § 23-4-7a (2005), TTD benefits are not available once a claimant reaches MMI, returns to work, or is released to return to work. This standard is not met in this case.

9

Further, the claim administrator must provide medically related and reasonably necessary treatment for compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006). We cannot find that, after the addition of lumbar/lumbosacral radiculopathy to the claim, the Board erred in finding that the epidural steroid injections, an EMG/NCS study of the lower extremities, and a referral to Dr. Patel should be authorized as they are medically necessary and reasonably required to treat the compensable injury.

Finally, our review is deferential to the Board. "[U]nless the evidence compels a contrary finding, the Board's reliance on certain medical reports and opinions over others is entitled to considerable deference." *Delsignore v. Timberline Logging Enterprises, LLC*, No. 23-636, 2025 WL 1276870, at *3 (W. Va. May 2, 2025) (memorandum decision) (citing *Arch Coal, Inc. v. Howard*, No. 23-391, 2025 WL 1122258, at *3 (W. Va. Apr. 16, 2025). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong.

Accordingly, we affirm the Board's September 13, 2024, order.

Affirmed.

**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White